Filed 8/19/24  In re L.F.A. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re L.F.A. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B331953 (Super. Ct. Nos. J073164, J073165) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  K.R.,  Defendant and Appellant. | |

K.R. (Mother) appeals from the juvenile court order denying her petition to modify the termination of reunification services and the removal of custody of her daughters L.F.A. and

L.H.A.  (Welf. & Inst. Code,[1] § 388.)  Mother contends she established changed circumstances and the court erred when it denied the petition without an evidentiary hearing.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

L.H.A. was born in February 2020.  Mother and R.A. (Father) appeared to be under the influence and refused testing of the baby or themselves.  Mother was breastfeeding L.H.A.  L.H.A. and her sister L.F.A., then 10 months old, were removed from the parents' custody and placed with an aunt.

The first amended petition (§ 300, subd. (b)(1)) filed in May 2020 alleged Mother was a recent user of methamphetamine, was arrested for possession of a controlled substance, and that her drug use rendered her incapable of caring for the children, both of whom were infants at the time.  It also alleged that Mother failed to protect the children from Father's drug use by allowing him to reside in the children's home.

Mother provided a negative drug and alcohol test in March 2020 but missed two tests in June.  She began participating in a county-run alcohol and drug treatment program in July 2020 and completed it in January 2021.  She also completed an Interface positive parenting program.

The Los Angeles County Juvenile Court sustained the amended petition.  The court ordered that Mother receive reunification services.

In December 2020, Mother told a social worker she and Father had not been together since the case started.  But in January 2021, Mother and Father had a domestic disturbance,

_____

[1] Subsequent statutory references are to the Welfare and Institutions Code.

and Father was arrested for possession of controlled substances and driving under the influence of drugs. In July 2021, Mother gave birth to another girl, H.R.; Father was the alleged father.

In 2021, Mother participated in Narcotics Anonymous (NA), Co-Dependents Anonymous, Behavioral Health drug abuse group sessions and aftercare services, and individual counseling for substance abuse and codependent behavior. She provided several negative drug tests but also missed some tests. In November 2021, the court found Mother made substantial progress toward alleviating or mitigating the causes necessitating placement and returned the children to her custody.

The Los Angeles County Department of Children and Family Services (DCFS) advised Mother to not visit Father and not take the children to his home. But Mother and the children were seen at his home in January 2022; later that day, officers found fentanyl, methamphetamine, and drug paraphernalia on his living room floor. He was arrested at the courthouse two weeks later while Mother and the children waited for him in the car. Police found fentanyl in rubber gloves concealed inside his body. As a result, DCFS filed a subsequent petition (§ 342).

In February 2022, the children were removed from Mother's custody and again placed with their aunt. On March 9, Mother tested positive for amphetamine and methamphetamine. From mid-March through June, she provided seven negative tests but failed to appear for seven tests.

As of August 2022, Mother was participating in substance use treatment, parenting meetings, NA meetings, and counseling. The court sustained the subsequent petition and ordered additional reunification services and monitored visitation, with DCFS having discretion to liberalize visits.

3

The case was then transferred to the Ventura County Juvenile Court. Mother stopped attending individual therapy in October 2022 and did not respond to the therapist's voicemails. Mother told the Ventura County Human Services Agency (HSA) she had switched therapists.

In February 2023, Mother gave birth to a baby boy, K.R.R. Mother and the baby both tested positive for methamphetamine and fentanyl. Mother admitted using methamphetamine three days earlier. She again denied being in a relationship with Father. She claimed the baby was fathered by another man, but HSA learned he had been recruited by Father to pose as the boy's father. Visitation reverted to supervised due to Mother's substance use and her contact with Father.

In March 2023, Mother provided proof of attendance at Al-Anon and Co-Dependents Anonymous meetings. She also reported attending NA meetings. She entered the Prototypes residential drug treatment program on March 29, 2023.

At the 24-month review hearing on May 15, 2023, pursuant to an agreement between Mother and HSA, the court terminated Mother's reunification services as to L.F.A. and L.H.A., but continued them as to H.R.

Before the section 366.26 hearing, Mother filed a petition to change court order (§ 388). It sought custody of L.F.A. and L.H.A. with family maintenance, or, in the alternative, additional reunification services with increased unmonitored visitation. She contended she made "[s]ubstantial [p]rogress in her court ordered programs," including being "fully engaged in a substance abuse treatment program, therapy, parenting classes, 12-step meetings, drug testing, and visitation with children." She attached documentation that she completed a parent education and

4

support program (Kids & Families Together) in February 2023. She declared that she remained in Prototypes for 60 days after the May 15 hearing and then enrolled in an outpatient substance abuse program. She stated she continued to receive individual therapy she had begun in January, but with a different therapist.

A memorandum from Ventura County Behavioral Health attached to Mother's petition stated she was consistently participating in its Outpatient Substance Use Services Program, had been sober for six months, and was making "excellent progress in her recovery." A log showed she attended anger management, parent support, and other NA meetings from April through July 2023. Mother declared she had ended her relationship with Father, and that he did not know her current residence or cell phone number.

Regarding the best interests of the children, Mother contended the girls "bonded" with her, and placement with the aunt was detrimental because she interfered with Mother's reunification. HSA and the girls' counsel opposed the petition.

The juvenile court ruled that Mother had not made a prima facie case and denied her petition for modification. The court considered Mother's recent efforts in the context of her prior conduct, including giving birth to K.R.R. while both were positive for drugs and while she was participating in counseling. The court found: "The evidence presented in the request may show some new evidence of changing circumstances, but not a change of circumstances." The court continued the section 366.26 hearing to November 29, 2023.[2]

---

[2] Appeal by both parents of the subsequent section 366.26 order is pending under case number B335632.

DISCUSSION

"Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made."  (§ 388, subd. (a)(1).)

"Section 388 provides the 'escape mechanism' that . . . must be built into the process to allow the court to consider new information."  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)  "Such petitions are to be liberally construed in favor of granting a hearing to consider the parent's request."  (*Ibid.*)  The parent seeking modification must "make a prima facie showing to trigger the right to proceed by way of a full hearing."  (*Id.* at p. 310.)  "[T]he court may summarily deny the motion if the petition fails to make a prima facie showing (1) that a change of circumstances or new evidence requires a changed order, and (2) that the requested change would promote the best interests of the child."  (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1080.)

"We review the juvenile court's denial of a section 388 petition for an abuse of discretion."  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616.)  " ' ["]The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' "  (*Ibid.*)

To prevail in a section 388 petition, "the petitioner must show *changed*, not changing, circumstances."  (*In re Mickel O., supra*, 197 Cal.App.4th at p. 615.)  "In considering whether the petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case.  [Citation.]  The court may consider factors such as the

6

seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner.  [Citation.]  In assessing the best interests of the child, 'a primary consideration . . . is the goal of assuring stability and continuity.' " (*Id.* at p. 616.)

We conclude these factors did not show changed circumstances here.  Some services, such as the Kids & Family Together program, predated the order terminating Mother's reunification services.  Other services, engaged in by Mother after services were terminated, were similar to those that Mother received during the 32 months of reunification services.  For example, Mother had participated in drug programs and individual counseling before she took the children to Father's home where they had access to drugs in January 2022, followed by her use of amphetamine and methamphetamine the following month.  And six months before the section 388 petition, Mother had received additional counseling and substance abuse treatment before giving birth to a drug-positive child.  Thus, this case is unlike *In re Hashem H.* (1996) 45 Cal.App.4th 1791, where the section 388 petition documented more than 18 months of consistent therapy that successfully resolved the mother's mental and emotional problems that had led to the removal of custody.  (*Hashem H.*, at p. 1799.)

"The change in circumstances supporting a section 388 petition must be material" and " 'substantial.' " (*In re N.F.* (2021) 68 Cal.App.5th 112, 120-121.)  In our view, Mother did not make that showing here.  "[A] showing of materially changed circumstances requires more than a relatively brief period of

7

sobriety or participation in yet another program." (*Id*. at p. 121.) As we concluded in *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223, "Appellant's recent sobriety reflects 'changing,' not changed, circumstances" in light of Mother's "history of drug relapses" and does not meet the requirement "that modification of the prior order would be in the best interests of the minor child." It is commendable that Mother remained sober for six months, but that was not a "substantial" change of circumstances given her history of "periods of sobriety alternated with recurring drug use." (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [seven months' sobriety insufficient to show change of circumstances].)

Mother's assurance that she was no longer in a relationship with Father does not compel a contrary result. She made similar claims throughout the underlying proceedings, even as she had two additional children with Father and had another man pretend to be one of their fathers. And contrary to Mother's claim, the juvenile court did not mistakenly believe she resided at Prototypes when she gave birth to K.R.R. The court commented only that she was receiving counseling at that time.[3]

Nor did Mother make a prima facie case that custody or increased visitation would be in the children's best interest. The children spent the majority of their young lives in the custody of the resource parents. Mother had physical custody for only three of the previous 42 months. She did not present new evidence to negate that the girls were happy with the resource parents and had "a strong attachment" to them.

---

[3] Exhibits attached to the section 388 petition showed Mother was receiving counseling from Ventura Community Counseling, and had completed a Kids & Families Together program.

"When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. [Citation.] That need often will dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464 [affirming denial of § 388 petition without hearing].) Such is the case here.

Mother received reunification services for the extraordinarily lengthy period of 32 months. "Childhood does not wait for the parent to become adequate." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 310.) The termination of reunification services and setting a permanency hearing were necessary to serve the minors' " 'need for prompt resolution of [their] custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.' " (*In re Abbigail A.* (2016) 1 Cal.5th 83, 95.) There was no abuse of discretion in denying Mother's section 388 petition.

DISPOSITION

The juvenile court's order denying the petition for modification, entered September 14, 2023, is affirmed.

<u>NOT TO BE PUBLISHED</u>.

BALTODANO, J.

We concur:

GILBERT, P.J.          YEGAN, J.

9

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.